IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

Joseph Kenneth Newbold,                    )
     Petitioner,                           )
                            )
v.                                         )          1:08cv1266 (LO/JPP)
                            )
Warden Patricia Stansberry,                )
     Respondent.                           )

FILED

JAN 1 2 2009

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

<u>MEMORANDUM OPINION</u>

Joseph Kenneth Newbold, a federal inmate proceeding <u>pro se</u>, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, and has paid the applicable filing fee. Newbold asserts three claims which center on the contention that his request to be transferred to be closer to his family members was wrongfully denied by the Bureau of Prisons ("BOP"). For the reasons which follow, this Court appears to be without subject matter jurisdiction to entertain this petition, and the petition on its face has no merit. It consequently will be dismissed.

**I. Background**

Newbold is currently serving a 225-month sentence imposed by the District Court for the Middle District of North Carolina after he pleaded guilty to charges of distributing 5-MEO-AMT, money laundering, and possession of a firearm by a convicted felon. The convictions and sentence were affirmed by the Fourth Circuit Court of Appeals. <u>United States v. Newbold</u>, 215 Fed. Appx. 289 (4th Cir. 2007). Upon his conviction, Newbold was assigned to FCI Petersburg Medium, which is approximately 200 miles distant from the homes both of his wife and son in Randleman, North Carolina, and of his parents in Rose Hill, North Carolina. At his initial Unit Team program review in March, 2006, Newbold asked to be transferred to one of the federal prisons at Butner, North

Carolina, "to ameliorate family hardship in visitation." He allegedly was told that if he maintained a good work record and accrued no disciplinary infractions for a year, a transfer to FCI Butner Low would be recommended. However, in September, 2006, the BOP promulgated a new rule which states that "once the inmate has been transferred within 500 miles of his or her release residence, no further referrals will be made for nearer release transfer consideration." BOP Program Statement 5100.08, Pet'r Ex.A. Newbold's release residence is Randleman, North Carolina, which is within 500 miles of his current place of incarceration.

On June 26, 2007, Newbold submitted a request for a "nearer release transfer" to his case manager, citing as the reason his family's hardship in visiting him at FCI Petersburg. The request was denied three days later, with the notation that "PS 5100.08 states that if you are within 500 miles of your release residence, then a nearer release transfer would not be a consideration. Additionally, the Bureau of Prisons does not do hardship transfer requests for family hardships if that is the only reason for a transfer." Pet'r Ex. E. Newbold asserts that this response violated his "statutory procedural right [under 18 U.S.C. §3621(b)] to an individualized determination of [his] request for transfer."

Upon receiving the denial of his transfer request, Newbold and his parents began to write letters to various members of Congress, criticizing what Newbold terms "the 500-mile rule." According to Newbold, the fact that he received return correspondence indicates that BOP officials were "aware that [he] was exercising [his] right to petition for redress of grievances in a manner critical to them." Pet. at 11.

In September, 2007, Newbold's Unit Team allegedly recommended his transfer to FCI Butner Low. However, upon receipt of that recommendation, the BOP transferred Newbold instead from

2

FCI Petersburg Medium to FCI Petersburg Low. Newbold was "upset by this unexpected action," but his request for a reversal of the decision was denied. Newbold asserts that this "nasty" and "vindictive" action by the BOP was motivated by retaliation for Newbold's criticism of the 500-mile rule. Pet. at 13. The transfer to FCI Petersburg Low was effected in January, 2008, and Newbold alleges that his conditions of confinement are now "markedly or significantly worse," because the facility was built in 1932, is in substandard and dilapidated condition, lacks air conditioning, and has inadequate bathroom facilities.

In January, 2008, Newbold met with his Unit Team and again requested a transfer to one of the federal prisons at Butner, North Carolina, this time citing as reasons family hardship as well as the asserted inability of the medical staff at FCI Petersburg to care for his chronic hepatitis C infection. Newbold's request again was refused, with the notation that "since you are within the 500 mile range, it appears that you will not be eligible for a 'nearer release' transfer until Nov. 11, 2011 ... Furthermore, you are classified as a Care Level I inmate with healthy or simple chronic care. Your medical concerns can be addressed at this facility." Pet'r Ex. L.  Newbold unsuccessfully challenged this response through the BOP's administrative remedy program. Pet'r Ex. M - P.

In this federal petition, Newbold seeks habeas corpus relief pursuant to 28 U.S.C. §2241 on the basis of three claims: (1) his right to procedural due process in the form of individualized consideration of his transfer request was violated when the BOP categorically denied it solely because of the 500-mile restriction; (2) the 500-mile rule is invalid and should be set aside because it is contrary to and exceeds the statutory authority of 18 U.S.C. § 3621(b), and because it was promulgated without public notice and comment; and (3) his right to petition the government for redress was violated when the BOP took adverse action in retaliation for his criticism. Pet. at 2-5.

3

As specific relief, Newbold prays for a declaration that the denials of his transfer requests violated
his statutory rights and an order directing the BOP to reconsider those requests pursuant to 18 U.S.C.
§ 3621 (b);  a decree invalidating and setting aside Program Statement 5100.08; and a decree that
his confinement at FCI Petersburg Low is retaliatory and an unlawful restraint on his liberty.

II.

As a threshold matter, the Court's jurisdiction to entertain this petition is dubious. It is well
established that a federal prisoner may challenge the execution of his sentence in a petition brought
pursuant to § 2241. United States v. Little, 392 F.3d 671, 679 (4th Cir. 2004). However, "the precise
meaning of 'execution of a sentence' [remains] hazy." Woodall v. Fed. Bureau of Prisons, 432 F.3d
235, 242 (3d Cir. 2005). In Woodall, the Third Circuit looked to decisions of the Second, Sixth,
Ninth and Tenth Circuits, as well as to the plain meaning of the term "execution" ("to put into effect
or carry out") in allowing a § 2241 challenge to regulations that limited a prisoner's opportunity for
placement in a community corrections center ("CCC"). The Court in that case noted that "[c]arrying
out a sentence through detention in a CCC is very different from carrying out a sentence in an
ordinary penal institution," so "placement in a CCC represents more than a simple transfer."
Specifically, the Court observed that at CCC's, unlike in prison, inmates may be eligible for short-
term releases for daily work in the community, overnight and weekend passes, and longer furloughs.
Woodall, 432 F.3d at 243. Thus, in determining that the petition in that case was properly brought
pursuant to § 2241, the court reasoned that "Woodall's petition crosse[d] the line beyond a challenge
to, for example, a garden variety prison transfer." Woodall,  432 F.3d at 243; accord, Pischke v.
Litscher, 178 F.3d 497 (7th Cir. 1999)("Habeas corpus cannot be used to challenge a transfer
between prisons ... unless the custody in which the transferred prisoner will find himself when

4

transferred is so much more restrictive than his former custody that the transfer can fairly be said to have brought about ... 'a quantum change in the level of custody.'"); see Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007)(federal prisoner successfully challenged BOP regulation denying him consideration for placement in a CCC in an action brought pursuant to § 2241); United States v. Jalili, 925 F.2d 889 (6th Cir. 1991)(§ 2241 challenge to execution of sentence permitted where petitioner argued that confinement in prison rather than community treatment center violated terms of sentence).

In Ganim v. v. Fed. Bureau of Prisons, 235 Fed. Appx. 882 (3d Cir. 2007), the facts were directly on point with the instant case. There, a federal prisoner requested a transfer to be closer family members who encountered difficulty in visiting him from a distance. The request was denied "due to [the inmate's] release residence being within 500 miles." Following administrative exhaustion, Ganim challenged the BOP's action in federal court in a petition brought pursuant to § 2241. Ganim argued, as Newbold does here, that the 500-mile rule is an invalid "blanket rule" because it does not allow the BOP to consider an inmate's particular facts and circumstances, and he alleged a protected liberty interest in the proper application of the BOP's rules and regulations.

On appeal from the denial of relief by the district court, the Third Circuit held that Ganim's claims were not properly brought pursuant to § 2241 because "Ganim, who challenges a decision not to transfer him from federal prison in New Jersey to a similar facility in New York, does not cross the line that Woodall crossed. Ganim presents a challenge to a decision relating to a simple or garden variety transfer." Ganim, 235 Fed. Appx. at 883. The Court distinguished cases which had allowed § 2241 challenges to the execution of a federal prisoner's sentence in situations where a § 2255 would be inadequate to test the legality of detention, such as issues relating to parole decisions.

5

Noting that "[t]he routine transfer Ganim has in mind is far removed from a determination about the length of a sentence [and t]he BOP review of the transfer request, which is the real relief that Ganim seeks ..., is even farther removed," the Court held that the district court had been without jurisdiction to consider Ganim's petition under § 2241, and remanded with instructions that the petition be dismissed for lack of jurisdiction.  Id.

For the same reasons articulated in Ganim, this Court appears to be without jurisdiction to entertain the instant petition. Here, Newbold seeks to challenge the BOP's denial of his request for "a simple or garden variety transfer" from a federal prison in Virginia to a similar facility in North Carolina. While petitioner attempts to portray the surroundings in which he currently finds himself as exceedingly arduous due to the age of the physical plant at FCI Petersburg Low, his assertions taken as true do not render his claim susceptible of being interpreted as seeking the "quantum change in the level of custody" necessary to render the execution of a federal sentence amenable to relief under § 2241. Cf. Pischke, 178 F.3d at 498. Here, then, as in Ganim, this Court is without subject matter jurisdiction to entertain this § 2241 petition, and it will be dismissed.

III.

Alternatively, were this petition to be deemed cognizable under § 2241, it is apparent that Newbold would not be entitled to the relief he seeks. It is abundantly clear that a prisoner has no constitutional right to select a particular correctional facility for his placement or to be transferred to a different facility upon request. Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976). Instead, 18 U.S.C. § 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment. Fults v. Sanders, 442 F.3d 1088, 1090 (8th Cir. 2006). A prisoner has no due process interest in his placement at a particular prison, nor does the

6

Constitution "guarantee that the convicted prisoner will be placed in any particular prison." Meachum, 427 U.S. at 223-25; see also, Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976). Nor does a prisoner have a constitutional right to receive visits from friends or family members. See, e.g., Becerra v. Miner, 248 Fed.Appx. 368, 370 (3d Cir. Sept. 19, 2007)(unpublished)(prisoner has no "due process interest in his assignment to a particular institution, including one closer to his family"); Davis v. Carlson, 837 F.2d 1318, 1319 (5th Cir. 1988)(BOP has no duty to transfer prisoner closer to his wife's home); Brown-Bey v. United States, 720 F.2d 467, 470 (7th Cir. 1983)(if petitioner "wants to be transferred closer to his family and friends, he fails to state a cognizable federal claim"); Moore v. United States Att'y Gen., 473 F.2d 1375, 1376 (5th Cir. 1973)(mandamus unavailable to a prisoner seeking transfer to a facility closer to his family because such a claim is not cognizable under federal law). Therefore, to the extent that all of Newbold's claims are premised on the assumption that he has an enforceable right to be housed nearer to his family, all fail to state a claim for federal relief.

Newbold's attempts to restate his core concern in various guises are likewise unavailing. The same argument Newbold makes in his first claim, that the denial of his requested transfer on the basis of the "500 mile rule" violated his right to procedural due process in the form of individualized consideration of his request, was considered and rejected in Jordan v. Longley, 2008 WL 4691813 (D.S.D. Oct. 20, 2008). The Court in that case explained that while § 3621(b) sets forth criteria that must be followed by the BOP in making placement determinations on a case-by-case basis, the BOP may still establish rules and regulations to help guide its administrators in addressing transfer and placement requests. Program Statement 5100.08 (i.e., the "500 mile rule") establishes one such policy. Jordan, 2008 WL 4691813 at *5. Looking to the criteria set out in Williams v. Armontrout,

7

852 F.2d 377, 379 (8th Cir. 1988),[1] the Court in Jordan found that neither § 3621(b) nor Program Statement 5100.08 creates a constitutionally cognizable liberty interest. "While § 3621(b) contains 'particularized substantive standards or criteria' to help the BOP determine which correctional facility is suitable for an inmate, it does not require the BOP to transfer an inmate to a particular facility. ... Nor does Program Statement 5100.08 create a liberty interest in a placement at a particular correctional facility. This policy ... rather sets forth the parameters of transfers." Id. at *8, quoting Williams, 852 F.2d at 379. In the absence of the creation of a liberty interest by either § 3621(b) or Program Statement 5100.08, Newbold's attempt to predicate a claim of denial of his right to procedural due process on those provisions must fail. See Byers v. United States Dep't of Justice, 2008 WL 4427935, *1 (E.D. Ky. Sept. 25, 2008)(§ 2241 petition challenging BOP decision under P.S. 5100.08 dismissed at screening because "prisoners lack any liberty interest protected by the Due Process Clause to placement in a particular institution, Montayne v. Haymes, 427 U.S. 235 (1976), or to avoid a transfer to an institution less agreeable to the inmate, Meachum v. Fano, 427 U.S. 215 ...".)

Newbold's argument that the "500-mile rule" is invalid and should be set aside because it is contrary to and exceeds the statutory authority of 18 U.S.C. § 3621(b), and because it was promulgated without public notice and comment, requires little discussion. As explained by the court in Jordan, the BOP in promulgating Program Statement 5100.08 set out rules and regulations to assist its administrators in making the placement determinations required by § 3621(b). The two

---

[1]To determine if a statute or regulation creates a liberty interest, a court must inquire first if it contains "particularized substantive standards" or criteria that significantly guide the decisionmakers, and second whether it uses mandatory language requiring the decisionmakers to act in a certain way. Williams, 852 F.2d at 379, citing Nash v. Black, 781 F.2d 665, 668 (8th Cir. 1986).

provisions are complimentary rather than contradictory. In addition, no requirement exists which would compel the BOP to solicit public comment before enacting such self-governing regulations.

Lastly, Newbold's entirely conclusory assertions that the BOP's denial of his transfer requests amounted to retaliation for his criticism of its policies are inadequate to state a claim. To succeed on a claim of retaliation, an inmate must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir.), cert. denied, 514 U.S. 1022 (1995). Thereafter, the inmate must demonstrate that he suffered some adverse impact or actual injury. ACLU of Md., Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990)). Additionally, an inmate must come forward with specific evidence "establish[ing] that but for the retaliatory motive, the complained of incident ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); accord McDonald v. Hall, 610 F.2d 16, 18-19 (1st Cir. 1979); Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir. 1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); Collinson v. Gott, 895 F.2d 994, 1002 (4th Cir. 1990) (Phillips, J., concurring). The instant petition contains nothing more than bare allegations of retaliation, which are insufficient as a matter of law to support such a claim. Adams, 40 F.3d at 75. Moreover, since the BOP has complete discretion concerning the placement of its inmates, and since its denials of Newbold's transfer requests were entirely consistent with Program Statement 5100.08, no showing that such actions would not have occurred "but for" the alleged retaliatory motive has been or can be made in this case. Cf. Woods, 60 F.3d at 1166.

9

IV.

For the above reasons, this petition will be dismissed.  An appropriate Order shall issue.

Entered this 12th day of January 2009.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

10